The opinion of the court was delivered by
Duncan, J.
Children follow the condition of their mother. The only question on this case stated in the nature of a special Verdict, is this,—was Nell, the mother of the plaintiff, a slave at the time of her birth ? if she was not, the registry would not make her a servant until twenty-eight, and he is a free man. By the act for the gradual abolition of slavery, every negro and mulatto child born thereafter, who, in case the act had not been made, would have been a servant for years or life, or a slave, instead of following the condition of his mother, is made a servant until twenty-eight.; and, by the supplement.to that act of the 89th of
*19 March, 1788, the possessor of such child, that is, the child of a slave, is required to register him, in a prescribed form, under the penalty of losing all right to such child, and his being immediately free. The plaintiff, if he be a servant for years, would have been a slave for life, had it not been for those laws. By the will of the owner of Nell, (Aaron Finley,) Nell ceased on his death to be a slave, and became a servant for years. No one can be parity a slave and partly a servant for years, or free: he must be the one or the other entirety. Slaves for life are a distinct class of human beings, without any civil right or privilege. They can acquire no property, because they are themselves the property of another. If a slave is convicted of a crime, whose punishment is death, the jury trying him is to appraise and declare his value; and, in case he is executed, that value is to be paid out of the state treasury. If Nell had been executed for crime, the state would not have been bound to pay to the person entitled to her services for twenty years, her value for life,, because no one was entitled to her services for life. “My will is, (says the testator,) that Nell continue with Margaret, my wife, during hef widowhood or natural life; and, if she marry, Nell shall be valued at whatever time is to come of twenty years from this date, and the money arising therefrom shall be proportionably divided between my children, Maria and William; if her widowhood or natural life exceed twenty years from this date, then Nell is to be free when either of these takes place, after this time and not before.” The services of Nell are secured to his family until twenty years after making the will. It is a plain declaration by the testator, that Nell shall be a servant for twenty years. Without deciding an abstract principle, as to manumission at a future day by the master, it is sufficient to say, that the master and owner of the slave Nell has declared that she shall, from the date of his will, be no longer a slave; but that she shall be and-continue a servant for twenty years. Her status and condition in life was changed: her perpetual bondage was converted into a servitude for years, with all (the consequences attending it, which attend a servitude for years. The curse of slavery was removed by the benevolence of her master, from the mother, and could not attach against her offspring born afterwards. The testator might have altered or revoked his will, and she continued a slave, or he might have sold her. The manumission from slavery and perpetual bondage took effect on his death: the will had, until that event, no operation. Different states, where slavery is tolerated,, may prescribe particular fprms and terms of manumission. Most of these United States in which such state of slavery still exists, have done so; but we are judging by the laws of this state, which prescribe no particular solemnity, and on the intention of the testator expressed in his will. No- doubt the testator might have made the mother free at a particular period, and declared her issue should continue slaves; but he has not so declared. It was asked of tho *20 counsel of the defendant, to whom did the issue belong, whose servant was he? The counsel seemed to admit that he belonged to the personal representatives. To his widow, under whom the defendant claims, he did not belong. She had only a claim to the services of his mother during her widowhood. His representatives have not registered the plaintiff, nor do they claim him. In 1809, when the widow married, she lost all right to the services of the mother. The value of the residue of the twenty years, which Nell had to serve, was bequeathed to the children of the testator. The manumission here does not depend on the principles of contract, but is an act of benevolence by a last will, on which the intentio’n of the testator is to prevail, and a liberal and •large construction should be given to effectuate such intention.
The testator has not bequeathed his property in Nell to any one,—her services for twenty years he has. I cannot conceive why it is the widow of the testator could hold the issue: the property in the mother'was not in her, if the issue is now the servant of any one, it must be of the children; for, on her marriage, the widow forfeited all the right to the term of years she had in the mother. The children set up no claim from 1809. The presumption is, that they have abandoned all claim to her services, if they ever had a right. Between the children and the present defendant there is no connexion, neither privity of estate nor privity of contract. But I do not think he was the servant of any one: the implication is a manifest one, that all his legatees should have of interest in Nell, was her service for the residue of the twenty years; he did not intend the issue should be servants: he has not said so. If the act of abolition had not passed, this man, if he is now a servant would then have been a slave, and his issue, ad infinitum. This difference can make no change in the construction of the will. It never can be supposed, that this testator bequeathing the services of Nell for twenty years, and no longer, and that she should then be free, intended her issue should be slaves. He minutely regulates the right any one should have in Nell, in any event, to twenty years. It would be an unnatural construction of this will to say, that he died intestate as to the issue, and that the issue descended as property to his children, who had not the property in Nell, but her services for twenty years.
On the whole case, my opinion is, that there is a middle state between servitude and slavery, and that Nell, on her master’s death, became a servant for twenty years; and, consequently, her children as much free as the children of any white woman. There is not much to be found in the books on the question: there is, however, one case, whose principles strongly bear on it, Oakford v. Waring, 14 Johns. 184. It was there decided, that where two of three tenants in common of a slave manumitted him, this was sufficient to entitle him to his freedom; and the reason given by Mr. Justice Spencer, who delivered the opinion of the court, was, *21 that no one can be partly a slave and partly free, or a slave for one third of the time and free two thirds; he must be either the one or the other entirely, and, that he had, no doubt suffering the plaintiff to act as a freeman, without any claim or pretence that he was a slave, would authorize the inference of a manumission by the other tenants in common, and every presumption in favour of liberty ánd freedom ought to be made. No one, after the testator’s death, had a property in Nell for life. She, then, was not a slave for life; and, not being a slave for life, her children must be free. I am therefore of opinion that the defendant is a free man, and that the judgment should he reversed, and judgment entered for the plaintiff.
Judgment reversed, and judgment entered for the plaintiff.